# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PHARMACEUTICAL CARE        :
MANAGEMENT ASSOCIATION,     :
                                 :
           Plaintiff,         :     Civil Action No.:     04-1082 (RMU)
                                 :
           v.                 :     Document Nos.:     47, 50
                                 :
DISTRICT OF COLUMBIA *et al.*,     :
                                 :
           Defendants.       :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION TO VACATE THE PRELIMINARY INJUNCTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on remand from the Court of Appeals for the District of Columbia Circuit. The issue before the court is whether the First Circuit decision in *Pharmaceutical Care Management Association v. Rowe*, 429 F.3d 294 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 2360 (2006) ("*Rowe*"), precludes the plaintiff from litigating the validity of Title II of the AccessRx Act of 2004, D.C. Code §§ 48-831.01 *et seq*. ("Title II") in this court.[1] Because the issues raised by the plaintiff in the instant case were already contested by the parties and decided by a court of competent jurisdiction, the plaintiff is precluded from litigating the validity of Title II in this court. Accordingly, the court grants the defendants' motion to vacate the injunction and its supplemental motion for summary judgment.

---

[1] To the extent that the plaintiff is not precluded, the court must also consider whether the First Circuit's decision in *Pharmaceutical Care Management Association v. Rowe*, 429 F.3d 294 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 2360 (2006) ("*Rowe*") has any effect on the current injunction prohibiting the defendant from enforcing Title II. Specifically, the D.C. Circuit has instructed this court to consider the effect of the *Rowe* decision on the plaintiff's likelihood of success on the merits.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff, the Pharmaceutical Care Management Association ("PCMA"), is a national

trade association representing pharmaceutical benefit management companies ("PBMs").  Mem.

Op. Granting the Pl.'s Mot. for Interim Injunctive Relief (Dec. 21, 2004) ("Mem. Op.") at 1.

PBMs process drug benefit claims and payments on behalf of health benefit providers, such as

Employment Retirement Income Security Act ("ERISA") health plans, government entities, and

insurance companies.  Compl. ¶ 14.  In this capacity, PBMs serve as intermediaries between drug

suppliers (*e.g.*, pharmaceutical companies and pharmacies) and health benefit providers.  *Rowe*,

429 F.3d at 298.  Additionally, PBMs provide discounted drugs to plan members, negotiate

rebate arrangements with drug manufacturers, and establish generic drug substitution programs.

Compl. ¶ 15.

Central to this case is the District of Columbia's Council's attempt to lower the cost of

prescription drugs by unanimously passing the AccessRx Act of 2004, D.C. Code §§ 48-831.01

*et seq*. ("AccessRx Act" or "Act" or "D.C. statute").  Mem. Op. at 2.  The Act took effect on

May 18, 2004.  *Id.*  Title II of the Act regulates PBMs by imposing fiduciary duties on them and

requiring them to disclose certain financial information.  *Id.*  Specifically, Title II requires that

PBMs: (1) discharge their fiduciary duties in accordance with all applicable laws, (2) disclose to

their customers information about the quantity of drugs purchased by the covered entity and the

cost to the covered entity for the drugs, and (3) disclose all financial arrangements between the

PBM and drug manufacturers.  *Id.*  While Title II allows a PBM to substitute one therapeutically

equivalent drug for another, the PBM must transfer to the covered entity any benefit or payment

received as a result of the drug substitution.  *Id.* at 3.  A violation of Title II constitutes a violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. Code § 48-832.03.  *Id.*

The District of Columbia's attempt to regulate PBMs is not novel.  In 2003, the Maine Legislature enacted the Unfair Prescription Drug Practices Act ("UPDPA" or "Maine statute"), Me. Rev. Stat. Ann. tit. 22, ("Me.") § 2699 (2006).  *Rowe*, 429 F.3d at 298-99.  The Maine legislature passed the UPDPA in an attempt to place Maine health benefit providers in a better bargaining position relative to PBMs, as well as to control prescription drug costs and to increase access to prescription drugs.  *Id.*  PCMA challenged the constitutionality of the Maine statute in the federal district court in Maine.  In March 2004, that court granted PCMA's motion for a preliminary injunction.  Defs.' Mot. to Vacate Prelim. Inj. & Suppl. Mot. for Summ. J. ("Defs.' Suppl. Mot.") at 2.

In response to the preliminary injunction, the Maine legislature amended the UPDPA to address the constitutional infirmities discussed by the Maine district court in its memorandum opinion.  Pl.'s Mem. in Opp'n to Defs.' Mot. to Vacate Prelim. Inj. & in Support of PCMA's Suppl. Mot. for Summ. J. ("Pl.'s Suppl. Opp'n") at 2.  After the Maine legislature amended the statute, the district court in Maine granted summary judgment in favor of the state in April 2005. *Pharm. Care Mgmt. Ass'n v. Rowe*, 2005 WL 757608, at *1 (D. Me. Feb. 2, 2005), *aff'd*, 429 F.3d 294 (1st Cir. 2005).  On November 8, 2005, the First Circuit affirmed the district court's grant of summary judgment on all claims.  *Rowe*, 429 F.3d 294.

## B.  Procedural Background

Because the Act imposes fiduciary duties and disclosure requirements on PBMs, as described *supra*, the plaintiff moved this court to enjoin the defendants from enforcing Title II. The court granted preliminary injunctive relief to the plaintiff on December 21, 2004, concluding that the plaintiff demonstrated a substantial likelihood of success on the merits of its takings claim.[2]  Mem. Op. at 1, 5.  The defendants appealed the court's decision to the D.C. Circuit, and additionally, the parties filed cross motions for summary judgment before this court.

On appeal, the defendants argued that the First Circuit's ruling in *Rowe* precluded the plaintiff from further litigating the validity of Title II under principles of collateral estoppel. Because the defendants raised the issue for the first time on appeal, the D.C. Circuit remanded the case to this court on March 27, 2006 for consideration of that issue.  Subsequent to the remand, on June 26, 2006, the District of Columbia passed temporary legislation amending the Title II to "conform the District's law to the Maine law to withstand constitutional and other legal challenges."  AccessRx Act Clarification Temporary Amendment Act of 2006 ("Amdt."), 53 D.C. Reg. 40 (2006).  The amendment took effect on September 19, 2006.

## C.  Comparison of Title II and the Maine Statute

As a result of the amendment, the Maine statute and the D.C. statute are now substantially similar, and in many instances, identical.  For example, both statutes impose a fiduciary duty on PBMs with respect to covered entities, *compare* Me. § 2699(2) *with* D.C. Code § 48-832.01(a),

---

[2]        In its motion for a preliminary injunction, the plaintiff also claimed that Title II is preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. §§ 8901 *et seq.*, and that Title II violates the Commerce Clause.  Mem. Op. at 5.

and require a PBM to perform its duties with care, skill, prudence, and diligence, *compare* Me. §
2699(2)(A) *with* D.C. Code § 48-831.01(b)(1)(A).  Because of the potential for
ERISA-preemption, *see* Pl.'s Suppl. Opp'n at 7, provisions requiring a PBM to discharge its
duties for the purpose of providing benefits to covered individuals have been repealed from both
statutes.  *Compare* Me. § 2699(2)(B) *with* D.C. Code § 48-831.01(b)(1)(B), *as amended by*
Amdt. Sec. 2(b)(1)(B).

The definition of "covered entity" in the Maine statute is slightly broader than the
definition in the D.C. statute.  The Maine statute applies to all hospitals, medical service
organizations, insurers, health coverage plans, and health maintenance organizations licensed in
Maine.  The D.C. statute, however, limits its application only to those hospitals, medical service
organizations, insurers, health coverage plans, and health maintenance organizations that are
licensed in the District of Columbia and that utilize PBMs.  *Compare* Me. § 2699(1)(A) *with*
D.C. Code § 48-831.02(4)(A)(i).  Both statues apply to individuals who are employed or reside in
the state.  *Compare* Me. § 2699(1)(A) *with* D.C. Code § 48-831.02(4)(A)(iii), *as amended by*
Amdt. Sec. 2(a)(1).  Furthermore, Maine's definition of a "covered individual" is broader than
D.C.'s definition.  *Compare* Me. § 2699(1)(B) *with* D.C. Code § 48-831.02(5).  The Maine
statute includes all individuals who receive "health coverage" from a covered entity.  Me. §
2699(1)(B).  In contrast, the D.C. statute only refers to individuals who receive a "prescription
drug benefit" from the covered entity.  D.C. Code § 48-831.02(5).

As to the definition of "pharmacy benefits management," both statutes only apply to
PBMs that provide prescription drug benefits for dispensation within the respective jurisdictions.
*Compare* Me. § 2699(1)(E) *with* D.C. Code § 48-831.02(16), *as amended by* Amdt. Sec. 2(a)(2).

Additionally, while the Maine statute applies to mail service pharmacies, the D.C. statute does not. *Id.* And, although the Maine statute requires PBMs to disclose all financial and utilization information, the D.C. statute only "requires the disclosure of cost information on a drug by drug basis." Pl.'s Suppl. Opp'n at 6. Again, this is an instance where the Maine statute has a broader reach than the D.C. statute. *Compare* Me. § 2699(2)(D) *with* D.C. Code § 48-832.01(c)(1)(A). Whereas the D.C. statute requires certain disclosures only upon request by the covered entity, the Maine statute contains no such limitation. *E.g.*, *compare* Me. § 2699(2)(G) *with* D.C. Code § 48-832.01(c)(1)(B). Both statutes allow PBMs to designate any disclosed information as confidential, with exceptions. *Compare* Me. § 2699(2)(D) and Me. § 2699(2)(G), *with* D.C. Code § 48-832.01(c)(2).

Both statutes have eliminated a provision allowing for drug substitutions in certain circumstances. *Compare* Me. § 2699(2)(E)(1) *with* D.C. Code § 48-832.01(d)(2), *as amended by* Amdt. Sec. 2(b)(2)(A). The amendment to the D.C. statute also now requires, as under the Maine statute, that PBMs making certain substitutions disclose to the covered entity the costs of both drugs and any benefits received by the PBMs. *Compare* Me. § 2699(2)(E)(2) with D.C. Code § 48-832.01(d)(2), *as amended by* Amdt. Sec. 2(b)(2)(B). Both statutes require PBMs to transfer those benefits in full to the covered entity. *Compare* Me. § 2699(2)(E)(3) *with* D.C. Code § 48-832.01(d)(2). Additionally, both statutes require PBMs to transfer to the covered entity any payments or benefits received by a PBM as a result of volume discounts, although the D.C. statute allows a PBM to contract with the covered entity for a return of a portion of those benefits. *Compare* Me. § 2699(2)(F)(2) *with* D.C. Code § 48-832.01(b)(2).

Finally, the compliance section of the D.C. statute has been amended to cover only

contracts between PBMs and covered entities "entered into in the District of Columbia or by a covered entity in the District of Columbia."  D.C. Code § 48-832.02, *as amended by* Amdt. Sec. 2(c).  With this comparison in mind, the court now turns to the defendants' motion to vacate the preliminary injunction and to the parties' supplemental cross motions for summary judgment.

## III.  ANALYSIS

### A.  Legal Standard for Res Judicata

"The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues."  *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).  Res judicata has two distinct aspects – claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in different circumstances and with different consequences to the litigants.  *NextWave Pers. Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).  Under claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  Under issue preclusion or collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94).  In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action."

*I.A.M. Nat'l Pension Fund*, 723 F.2d at 949; *Novak*, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

### B.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on

8

summary judgment.  *Id.*

    In addition, the nonmoving party may not rely solely on allegations or conclusory

statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

### C. *Rowe* Precludes the Plaintiff from Litigating the Validity of Title II

    The defendant argues that collateral estoppel bars the plaintiff's claims in this case

because "PCMA's federal and constitutional claims were litigated unsuccessfully in the Maine

action" and "[t]he issues raised here and [in Maine] stem from nearly indistinguishable statutes."

Defs.' Suppl. Mot. at 9.  The plaintiff's main argument is that the court should not apply

collateral estoppel because this case presents an unmixed question of law.[3]  Pl.'s Reply in

Support of its Suppl. Mot. for Summ. J. ("Pl.'s Suppl. Reply").  Under the doctrine of collateral

estoppel, a party is precluded from litigating an issue if (1) the same issue was contested by the

parties and submitted for judicial determination in a prior case; (2) the issue was actually and

necessarily determined by a court of competent jurisdiction in a prior case; and (3) preclusion in

the second case would not work a basic unfairness on the party bound by the decision in the first

case.  *Yamaha*, 961 F.2d at 254; *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327

---

[3]        The plaintiff also contends that there are "critical differences" between the Maine statute
and the D.C. statute because although they were initially similar, the Maine statute was amended after
the Maine district court granted PCMA a preliminary injunction.  Pl.'s Mem. in Opp'n to Defs.' Mot. to
Vacate Prelim. Inj. & in Support of PCMA's Suppl. Mot. for Summ. J. ("Pl.'s Suppl. Opp'n") at 1.
Because the D.C. statute also has been amended to conform to the amended Maine statute on which the
*Rowe* decision is based, the court does not consider this argument.

(1979); *Beverly Health & Rehabilitation Servs., Inc. v. NLRB*, 317 F.3d 316, 322 (D.C. Cir. 2003). If the "same issue" contested by the parties is a pure question of law, however, "the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise." *Montana v. United States*, 440 U.S. 147, 162 (1979) (*citing United States v. Moser*, 266 U.S. 236, 242 (1924)). This exception, commonly referred to as the *Moser* exception, is narrowly limited to successive actions involving unrelated subject matter; parties may still be estopped when there is even partial congruence between the subject matter of the subsequent disputes. *Id.* at 162-63 (stating that the second case must be "so unrelated to the prior case that relitigation of the issue is warranted"); *see also Beverly Health*, 317 F.3d at 323 n.2 (applying collateral estoppel because the differences between the facts in two cases had no legal significance); *Nat'l Post Office Mail Handlers v. Am. Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990). Because the claims raised by the plaintiff in this case were actually and necessarily decided by the First Circuit in *Rowe*, the plaintiff is precluded from litigating the validity of Title II.

### (1) The Same Issues Now Raised were Contested by the Parties and Submitted for Judicial Determination in a Prior Case

The issues before this court are the same as those faced by the First Circuit in *Rowe*. In *Rowe*, the plaintiff challenged the Maine statute by alleging, by count, that it (1) is preempted by ERISA; (2) is preempted by the Federal Employee Health Benefits Act ("FEHBA"); (3) constitutes a regulatory taking of industry trade secrets; (4) effects a regulatory taking of revenues and other contractual rights in violation of the Due Process Clause; (5) violates the Contracts Clause; (6) violates the Commerce Clause; (7) violates the First Amendment; and (8) violates 42

U.S.C. § 1983. *Pharm. Care Mgmt. Ass'n v. Rowe*, 2005 WL 757608, at *1 (D. Me. Feb. 2, 2005). In the present case, the plaintiff raises the following claims, by count: (1) ERISA preemption; (2) FEHBA preemption; (3) unlawful taking of trade secret property; (4) violation of the Commerce Clause; (5) unlawful taking of revenues and other contractual rights and impairment of contracts; (6) violation of the First Amendment; and (7) violation of 42 U.S.C. § 1983. Compl. ¶¶ 27-66. Aside from combining the due process and contracts clause claims before this court, all of the claims raised by the plaintiff in the two suits are identical. Moreover, as described *supra*, the plaintiff here challenges a statute virtually identical to the one it challenged unsuccessfully in Maine.

Although the plaintiff challenges two different state statutes, the plaintiff's legal claims are identical. That is, the plaintiff challenges, pursuant to the same federal law, statutes that "prohibit identical conduct under identical standards." *NOW v. Operation Rescue*, 747 F. Supp. 760, 767 (D.D.C. 1990), *aff'd in part & vacated in part on other grounds*, 37 F.3d 646 (D.C. Cir. 1994). When two different state statutes "prohibit identical conduct under identical standards," a finding of the first court that a party violated the first statute precludes the party from relitigating the issue in the second court. *Id.* (comparing D.C. and Virginia trespassing and public nuisance statutes); *see also Star Scientific Inc. v. Carter*, 2001 WL 1112673, at *1-2 (S.D. Ind. Aug. 20, 2001) (deferring ruling on the plaintiff's challenge to the constitutionality of an Indiana statute because the plaintiff was challenging a comparable statute in a case pending before the Fourth Circuit).

The *Moser* exception for unmixed questions of law is inapplicable to this case because the demands of this litigation are "closely aligned in time and subject matter" to *Rowe*. *Montana*,

440 U.S. at 163.  As the defendants point out, the plaintiff "has failed to identify any material

facts at issue in the instant matter that differ from the Maine litigation, nor has it identified any

material differences in fact between its members' operations in Maine and in the District."

Defs.' Suppl. Mot. at 5-6.  Although the plaintiff attempts to distinguish this case from cases in

which a single statute's interpretation is at issue, Pl.'s Suppl. Reply at 7-8, the plaintiff has

pointed to no differences between the Maine and D.C. statutes that make this distinction

dispositive.  Because the Maine and D.C. statutes are substantially similar, the issues raised by

the plaintiff here are identical to the issues raised and contested by the parties in *Rowe*.

### (2) The Issue was Actually and Necessarily Determined by a Court of Competent Jurisdiction in the Prior Case

The plaintiff avers that because the two cases deal with two different state statutes, "[o]f

necessity, the issue of the validity of [D.C.'s] statute cannot have been 'actually litigated and

necessarily determined' in the first case."  Pl.'s Suppl. Reply at 4.  According to the plaintiff,

applying collateral estoppel would "contradict principles of state sovereignty" because "where a

statute is adopted from another state, a decision finding the original statute constitutional" does

not bar a state court from determining for itself the constitutionality of the statute.  *Id.* at 5.  The

cases cited by the plaintiff in support of this proposition, however, involve cases that only

implicated issues of state, not federal, law.  *Id.* (citing *Acco Contractors, Inc. v. McNamara &*

*Peepe Lumber Co.*, 133 Cal. Rptr. 717, 718-19 (Cal. Ct. App. 1976); *State ex. rel. Mankin v.*

*Wilson*, 569 P.2d 922, 924 (Mont. 1977); *City of Reno v. 2d Jud. Dist. Ct. In & For County of*

*Washoe*, 95 P.2d 994, 1000 (Nev. 1939) (stating that the adoption of one state's construction of a

statute would transgress the province of another state's court to determine issues arising under

12

that state's constitution); *Boyd v. C.C. Ritter Lumber Co., Inc.*, 89 S.E. 273, 275 (Va. 1916)).  In other words, the plaintiff's argument that each state should be allowed to determine the legitimacy of its own legislation, Pl.'s Suppl. Reply at 6, is limited to situations where a litigant is challenging a state statute under the respective state constitution or state laws.[4]  In this case, the plaintiff challenges Title II under federal law.  Thus, the concern that "a statute enacted by [one] State [could be] engrafted into the Constitution or statutes" of another state, *Boyd*, 89 S.E. at 175, is not an issue here.

In this case, the First Circuit decided that a statute with the same provisions as Title II survived the plaintiff's federal law challenges.  The First Circuit, in other words, already decided the same issues that the plaintiffs raise in this litigation: namely, that a statute with the same or broader wording as Title II was not preempted by ERISA or the FEHBA, did not constitute a taking, and did not violate due process, the First Amendment, or the Commerce Clause.  *See generally Rowe*.  Because the D.C. statute is substantially similar to the Maine statute, and the

---

[4]        In support of its argument, the plaintiff also points to the state-by-state litigation challenging state statutes enacted to ensure payments under the tobacco settlement agreements negotiated between states and major tobacco companies.  Pl.'s Suppl. Reply at 5.  In these cases, states that entered into the settlement agreements were required to enact and enforce a qualifying statute.  *Star Scientific v. Beales*, 278 F.3d 339, 346 (4th Cir. 2002).  The master agreement included a model statute and additionally, some states enacted amendments to the model statutes.  *See, e.g., Xcaliber Int'l Ltd., LLC v. Edmondson*, 2005 WL 3766933, at *1 (N.D. Okla. Aug. 31, 2005) and *Xcaliber Int'l Ltd., LLC v. Kline*, 2006 WL 28870, at *2 (D. Kan. Feb. 7, 2006).  The plaintiff asserts that many of the state amendments were identical, but that the courts did not analyze the plaintiff's challenge to the amendments under the doctrine of issue preclusion.  Pl.'s Suppl. Reply at 6.  In these cases, however, neither side argued the preclusion issue.  *See, e.g.*, Def.'s Mem. in Support of Mot. for Summ. J., Civ. No. 05-2261 (D. Kan. Nov. 10, 2005); Def.'s Am. Mot. for Summ. J., Civ. No. 04-0922 (N.D. Okla Apr. 12, 2005).  District courts are not "required to unearth theories and precedents not cited by a party."  *Bucheit v. Palestine Liberation Org.*, 388 F.3d 346, 352 (D.C. Cir. 2004).  That responsibility is delegated to the party's attorneys.  *Id.*  Thus, there was no need for the district court to consider whether the plaintiff's case was precluded by an earlier decision.  Further, in one case, *Star Scientific Inc. v. Carter*, 2001 WL 1112673, at *2 (S.D. Ind. Aug. 20, 2001), in which the defendant raised the issue of collateral estoppel, the court deferred ruling on the constitutionality of the Indiana statute because the plaintiff was challenging the comparable statute in a case pending before the Fourth Circuit.

statutes are alleged to violate the same federal laws, the claims raised here were actually and

necessarily decided by the First Circuit in *Rowe*.  *Urfirer v. Cornfeld*, 408 F.3d 710, 718 n.1

(11th Cir. 2005) (explaining that collateral estoppel "refers to discrete issues of fact or law rather

than to claims or causes of action"); *In re Lewis*, 97 F.3d 1182, 1185-85 (9th Cir. 1996) (holding

that a previous ruling that a California statute did not impose a trust relationship on business

partners precluded it from holding that an identical Arizona statute did impose a trust

relationship on partners).  The First Circuit's decision on the specific claims is discussed in more

detail below.

### (a) ERISA Preemption

The First Circuit ruled that ERISA does not preempt the Maine statute because PBMs are

not fiduciaries under ERISA.  *Rowe*, 429 F.3d at 301.  The court reasoned that because the

requirements imposed on PBMs to disclose conflicts of interest and payments from drug

manufacturers involve "no discretion on the part of the PBMs" and were "purely ministerial,"

PBMs do not exercise the type of discretionary authority and control in the management and

administration of an ERISA plan that is typical of an ERISA fiduciary.  *Id.* at 300-01.

After determining that PBMs are not fiduciaries under ERISA, the First Circuit applied

the Supreme Court's two-part test in determining whether ERISA preempted the Maine statute.

*Id.* at 301 (citing *Ca. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519

U.S. 316, 324 (1997)).  In particular, the First Circuit decided that the Maine statute did not have

an impermissible "connection with" or "reference to" ERISA plans.  *Id.* at 303, 304.  The First

Circuit also rejected the plaintiff's alternative argument that the UPDPA's enforcement

provisions conflict with ERISA's exclusive remedial scheme. *Id.* at 305.  In short, the First

Circuit rejected the plaintiff's claims that ERISA preempts the statute.

Like the UPDPA, Title II imposes a fiduciary duty on PBMs with respect to ERISA plans,

D.C. Code § 48-832.01(a).  And, like the UPDPA, the D.C. statute's requirement that PBMs

disclose conflicts of interest and payments from drug manufacturers does not involve any

discretion on the part of the PBMs and is a purely ministerial duty.  D.C. Code § 48-

832.01(c)(1)(A).  The plaintiff's arguments, additionally, are the same arguments that were

considered and rejected by the First Circuit.  *Compare* Pl.'s Suppl. Opp'n at 12 (arguing that

ERISA preempts all state laws that apply to ERISA-covered employee benefit plans) *with Rowe*,

429 F.3d at 301 (same); *compare* Pl.'s Suppl. Opp'n at 13 (stating that the D.C. statute

"involve[s] PBMs in the administration of ERISA plans) *with Rowe*, 429 F.3d at 303 (quoting

PCMA's argument that the Maine statute attempts to regulate ERISA plans' relationship with

PBMs); *compare* Pl.'s Suppl. Opp'n at 19 (contending that the state statute "conflicts with the

exclusivity of ERISA's civil enforcement scheme by creating an alternative cause of action")

*with Rowe*, 429 F.3d at 305 (same).  Because the First Circuit already determined, based on the

same arguments by the same plaintiff, that a state statute imposing fiduciary duties on PBMs is

not preempted by ERISA, this court is precluded from considering the plaintiff's ERISA claims in this case.[5]

### (b) Takings and Due Process

The First Circuit also decided that the disclosure requirements do not constitute a full taking of property. *Rowe*, 429 F.3d at 315. Concluding that the disclosure requirements run only to PBMs' covered entity customers, the First Circuit held that the disclosure requirements do not effect a taking because PBMs should expect that they would have to disclose fair information and because PBMs are already subject to heavy regulation under federal and state law. *Id.* at 315-16. Because the required disclosure of all financial and utilization information under the Maine statute, Me. § 2699(2)(D), is broader than the required disclosure of quantity and cost information under the D.C. statute, D.C. Code § 48-832.01(c)(1)(A), and because the D.C. statute only requires certain disclosures upon request, D.C. Code § 48-832.01(c)(1)(B), a determination by the First Circuit that a statute imposing such disclosures does not constitute a taking necessarily encompasses any statute that imposes similar but more limited disclosures, 6 FED.

---

[5] In the First Circuit, the plaintiff conceded that whether the Maine statute is preempted by the FEHBA depends on the same analysis as whether the statute is preempted by ERISA. *Rowe*, 429 F.3d at 299. Similarly here, the plaintiff concedes that "FEHBA's preemption provision mirrors ERISA's preemption provisions." Pl.'s Suppl. Opp'n at 22-23. The court therefore also concludes that Title II is not preempted by the FEHBA.

With respect to the FEHBA claim, the plaintiff contends that it raises an issue that was "never fully briefed in the Maine action." *Id.* at 23. The plaintiff asserts that on January 1, 2005, the Office of Personnel Management "established specific standards for PBM arrangements with contracting carriers." *Id.* To the plaintiff, the new standards "provide further confirmation that Title II is preempted by the FEHBA." *Id.* at 24. The plaintiff, however, may not raise a new argument in a second proceeding if the argument could have been made in the first proceeding. *Yamaha*, 961 F.2d at 254 (citing *Sec. Indus. Ass'n Bd. of Governors of the Fed. Reserve Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990)). Here, the Maine district court issued its order on February 5, 2005, and the First Circuit affirmed the district court on November 8, 2005. *Id.* Because the new standards because effective on January 1, 2005, the plaintiff could have raised the issue in the Maine litigation proceeding. That is, the plaintiff cannot introduce the new argument in the instant litigation.

PRAC. § 132-03[4][c] (3d ed. 2004) (stating that "an issue may be subsumed in an issue that was explicitly determined").

Because the First Circuit determined that the Maine statute did not effect a taking of property, the First Circuit ruled that the statute does not violate due process. *Rowe*, 429 F.3d at 308 (stating that the due process claim "tags along" with the takings claim and that where "there is no taking and no deprivation, . . . no predeprivation hearing is required"). Similarly here, because the plaintiff is precluded from contending that the D.C. statute effects a taking of trade secrets, *supra*, it is likewise precluded from arguing that the statute deprives it of property in violation of due process.

### (c) First Amendment

The First Circuit held that the plaintiff's First Amendment claim was "completely without merit." *Rowe*, 429 F.3d at 316. Although the plaintiff goes to great lengths to challenge the First Circuit's reasoning behind its dismissal of the claim, Pl.'s Suppl. Opp'n at 31-36, it points to no reason why the First Circuit's determination does not preclude it from relitigating the issue before this court. The question for this court is not whether the First Circuit was correct, or whether this court agrees with the First Circuit's decision, but rather whether the First Circuit actually and necessarily decided this issue. *United States v. Anaconda Co.*, 445 F. Supp. 486, 495-96 (D.D.C. 1977). As the First Circuit clearly and summarily decided against PCMA on this claim based on a nearly identical statute, the plaintiff is precluded from relitigating the First Amendment issue here.

### (d) Commerce Clause

The First Circuit further decided that the Maine statute does not violate the Commerce Clause through "extraterritorial reach." *Rowe*, 429 F.3d at 311-12. According to the First Circuit, the Maine statute covers only contracts executed in Maine with respect to covered entities in Maine, and thus "does not require out-of-state commerce to be conducted according to in-state terms." *Id.* at 312. Similarly here, the D.C. statute as amended covers only contracts between PBMs and covered entities "entered into in the District of Columbia or by a covered entity in the District of Columbia." D.C. Code § 48-832.02, *as amended by* Amdt. Sec. 2(c). Thus, the plaintiff's argument that the D.C. statute is impermissibly extraterritorial, Pl.'s Suppl. Opp'n at 37, is precluded by the First Circuit's determination that a statute covering only contracts within the jurisdiction does not violate the Commerce Clause.

### (3) Preclusion in this Case Would Not Work a Basic Unfairness on the Plaintiff

The plaintiff argues that "justice and equity" considerations prevent the court from applying collateral estoppel here. Pl.'s Suppl. Opp'n at 9. The defendants, on the other hand, contend that the plaintiff is attempting to reargue its losing First Circuit arguments in this court. Defs.' Suppl. Reply at 6. Although the plaintiff claims it is not collaterally attacking the Maine statute or the First Circuit decision, Pl.'s Suppl. Reply at 4, its arguments before this court amount to such – it is essentially asking the court to review the First Circuit decision in *Rowe*. But it is the Supreme Court, not sister circuit courts or district courts in those circuits, that is tasked with the responsibility of reviewing court of appeals determinations. *Sec. Indus. Ass'n v. Bd. of Governors of the Fed. Reserve. Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990); *see also United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1181 (6th Cir. 1982) (applying collateral estoppel

and stating that if the EPA wanted to attack the decision of the Tenth Circuit, it should have

petitioned the Supreme Court for certiorari), *aff'd*, 464 U.S. 165 (1984).

Collateral estoppel applies even if the "determination was reached upon an erroneous

view . . . of the law." *Montana*, 440 U.S. at 162 (citation omitted); *United States v. Anaconda*

*Co.*, 445 F. Supp. 486, 495-96 (D.D.C. 1977) (stating that if another court renders a final

judgment on an issue, the decision is conclusive "even if this court disagrees with the

conclusion"). The plaintiff has petitioned the Supreme Court to review the same legal issues

raised here, and its recourses must end there. Because the plaintiff had a full and fair opportunity

to litigate the issues it now raises, it does not work unfairness to preclude the plaintiff from

relitigating the same issues in this court. In sum, the plaintiff raised, and the First Circuit

actually and necessarily decided, the same claims that the plaintiff raises in the instant action.[6]

---

[6]     The First Circuit also decided that the Maine statute did not infringe on any federal
rights, so as to violate 42 U.S.C. § 1983. Because the plaintiff here is precluded from arguing that the
D.C. statute violates any federal rights, *supra*, it is likewise precluded from litigating the § 1983 claim.

## IV.  CONCLUSION

Because the claims in this case are the same claims raised by this plaintiff and submitted for judicial determination in *Rowe*, because the claims were actually and necessarily determined by the First Circuit, and because applying preclusion would not work a basic unfairness on the plaintiff, the plaintiff is collaterally estopped from litigating the validity of Title II of the AccessRx Act before this court.  For the foregoing reasons, the court grants the defendants' motion to vacate the preliminary injunction and supplemental motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 6th day of March, 2007.

RICARDO M. URBINA
United States District Judge